VICTOR MANUEL TORRES
California Bar No. 140862
2664 Fourth Avenue
San Diego, CA 92103
Tel (619) 232-8776: Fax (619) 232-8857
lawforvatos@yahoo.com

EZEKIEL E. CORTEZ
California Bar No. 112808
1010 Second Avenue,
Suite 1850, San Diego, CA 92101
Tel (619) 237-0309: Fax (619) 237-8052
lawforjustice@aol.com

Attorneys for Plaintiffs: Samantha Lopez (by and through her Legal Custodian Liliana Cortez), Filadelfo Lopez, Laura Alonzo Lopez, Anna Lopez & Julia Lopez

## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA LOPEZ, a Minor, by and through her Legal Custodian, LILIANA CORTEZ, FILADELFO LOPEZ, LAURA ALONZO LOPEZ, ANNA LOPEZ & JULIA LOPEZ, as surviving heirs of DAVID ARNULFO LOPEZ, deceased,<br><br>     Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN DIEGO, a municipal corporation, CITY OF VISTA, a municipal corporation & DOES 1-50, inclusive,<br><br>     Defendants. | Case No. 07CV2028-JLS (WMc)<br><br>**PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' ENTIRE COMPLAINT OR TO STRIKE EMOTIONAL DISTRESS ALLEGATIONS AND REQUIRE JOINDER OF NECESSARY PARTIES**<br><br>Date: June 27, 2008<br>Time: 10:30 a.m.<br>Courtroom: 6<br>The Honorable Janis L. Sammartino |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

# I.
## INTRODUCTION

On October 19, 2007, Plaintiffs filed the instant action against the County of San Diego and the City of Vista for the wrongful death of Plaintiff Samantha Lopez's father, Plaintiff Filadelfo Lopez's son, and Plaintiffs Laura Alonzo Lopez, Anna Lopez and Julia Lopez's brother- David Arnulfo Lopez.   The wrongful death was the result of a routine domestic violence call turned bloodbath when three armed, uniformed Sheriff Deputies gunned down a lone, unarmed man as he emerged from a trailer chased by a K-9 sent into the trailer to attack.  Mr. David Arnulfo Lopez died at the scene with at least twelve bullet holes riddling his throat, back, buttocks, shoulder and thigh.  All entry wounds appeared to be from the back and all indications say Mr. Lopez was gunned down while trying to flee *away from* the Deputies.  Emergency aid was never rendered.

On February 26, 2008, the County of San Diego filed its Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiffs' Entire Complaint or to Strike Emotional Distress Allegations and Require Joinder of Necessary Parties.  In its Memorandum, the City is alleging: 1) Mr. Lopez's siblings and his father are not heirs; 2) That Samantha Lopez, as a minor, is

incompetent to proceed; 3) That no unconstitutional policy is alleged against the county; 4) That the plaintiffs' have not alleged a violation of their rights; 5) That the plaintiffs have improperly asserted a state law cause of action; 6) That the cause of action for intentional infliction of emotional distress fails to state a claim; 7) That emotional distress damages are not recoverable in a representative capacity; 8) That the fourth cause of action for negligence fails to state a claim; and 9) There must be a single joint action by all heirs.

As will be established in detail below, some of defendant's claims have merit while many do not. Therefore, defendant's motion to dismiss plaintiff's complaint or to strike emotional distress allegations should be denied.

## II.
## FACTS

It is helpful to note at the outset the context of this wrongful death action. The context is a clearly discernible pattern of fatal shootings of young Hispanic males in the city of Vista at the hand of the same Sheriff's Department. From May through August 2005 and in October 2006 a killing spree visited the Hispanic community in the city of Vista.

The killing spree started on May 15, 2005 when San Diego County Sheriff Deputy John Spach shot and killed Roman Torres in Vista, California.

Roman Torres was a Hispanic male.  He was only 24 years old at the time of his death.

On July 28, 2005 San Diego County Sheriff Deputies John Spach and Shawn Aitken shot and killed Sergio Garcia-Vasquez at his home in Vista, California.  Sergio Garcia-Vasquez was also a Hispanic male and he was 32 years old at the time of his death.

One day later, on July 29, 2005 San Diego County Sheriff Deputy Mark Ritchie shot Jorge Ramirez eight times, killing this 26 year old Hispanic male, in Vista, California.

On August 1, 2005 San Diego County Sheriff Deputy Lewis Schott shot and killed Jesus Manzo, yet one more Hispanic male, in his home in Vista, California.  Jesus Manzo was only 23 years old at the time of his death.

On October 21, 2006 San Diego County Sheriff Deputies shot and killed David Arnulfo Lopez in Vista, California.  It is on his behalf that the instant action has been filed.  David Arnulfo Lopez was yet one more in a series of Hispanic males killed by Sheriff Deputies in Vista.  He was only 27 years old and unarmed when he was fatally shot multiple times in the back.

Shortly before he was shot to death, Mr. Lopez and his wife had a dispute at the Vista Terraces Mobile Home Park.  Mr. Lopez's wife called the San

Diego County Sheriff's Department and reported a domestic disturbance. She then called again and updated that Mr. Lopez was going through the trailer "stabbing stuff." However, there is and was no indication that Mr. Lopez ever actually touched his wife or harmed her physically in any way.

After Mr. Lopez's wife called the Sheriff's Office, Mr. Lopez left the trailer he was in and ran down to another trailer where he had "an altercation" with two unnamed males. One or both of the unnamed males reportedly struck Mr. Lopez with a broom handle and struck him with a belt buckle across the face. There is and was no indication that Mr. Lopez retaliated or struck at these unnamed males in response. In fact, Mr. Lopez was assaulted by these two individuals.

San Diego County Sheriff Deputies arrived on the scene to find Mr. Lopez's wife. His wife directed the Deputies to a mobile home in space #59 indicating that was where Mr. Lopez was. The Deputies reportedly saw Mr. Lopez looking at them through the sliding glass door. The Deputies stood outside of the trailer with their government-issued firearms drawn. They sent in a K-9 unit to chase Mr. Lopez from the trailer. Mr. Lopez ran into the bathroom, broke the window and attempted to crawl through the opening presumably to escape from the Deputies, however, to no avail. As Mr. Lopez

then emerged, unarmed, through a door with the K-9 chasing him, the three deputies opened fire.  According to the autopsy report, Lopez was struck at least twelve times by bullets in the throat, back, buttocks, shoulder and thigh.  The autopsy report also indicates that nearly all of the gunshot wounds *were oriented from back to front with some upward trajectory* and *that Mr. Lopez was found face down on top of a small tool shed next to the side door*.  These facts will prove that Mr. Lopez was heading *away from the Deputies* and trying to flee from the Deputies when they opened fire and ended Mr. Lopez's life.  No weapons were found on or around Mr. Lopez.

No aid was rendered to Mr. Lopez nor did any of the Deputies attempt to resuscitate him.  Mr. Lopez was pronounced dead at the scene.  It is not clear whether or not he died immediately from the gunshot wounds.

**III.**
**ARGUMENT**

**A.    STANDING**

Plaintiffs concede that Mr. Lopez's siblings do not have standing to sue for their brother's wrongful death because Mr. Lopez has a surviving child. *Fraizer v. Velkura*, (2001) 91 Cal. App. 4th 942, 945-46; Cal. Code Civ. Proc., § 377.60(a); Cal. Prob. Code, § 6402(c).  Accordingly, Plaintiffs request leave of

the Court to amend the Complaint so as to dismiss Laura Alonzo Lopez, Anna Lopez and Julia Lopez from the instant action.

The defendant also correctly states that a parent must plead financial dependence on the decedent in order to establish standing under a state wrongful death claim. Cal. Code Civ. Proc., § 377.60(b). Plaintiffs have not pleaded this element on behalf of Mr. Lopez's father, Filadelfo Lopez. Plaintiffs therefore request leave of court to amend the pleading.

## B.    SAMANTHA LOPEZ'S COMPETENCY TO PROCEED

Samantha Lopez, Mr. Lopez's minor daughter, has standing to proceed in the instant action pursuant to Cal. Code Civ. Proc., § 377.60(a) and Cal. Prob. Code, § 6402(c). As a minor, Samantha Lopez is represented by and through her mother, Liliana Cortez as her legal custodian.

According to California Code of Civil Procedure § 372:

> When a minor, an incompetent person, or a person for whom a conservator has been appointed is a party*, that person shall appear either by a guardian or conservator of the estate* **or** *by a guardian ad litem appointed by the court in which the action or proceeding is pending*, **or** *by a judge thereof, in each case*. A guardian ad litem may be appointed in any case when it is deemed by the court in which the action or proceeding is prosecuted, or by a judge thereof, expedient to appoint a guardian ad litem to

represent the minor, incompetent person, or person for whom a conservator has been appointed, notwithstanding that the person may have a guardian or conservator of the estate and may have appeared by the guardian or conservator of the estate. The guardian or conservator of the estate or guardian ad litem so appearing for any minor, incompetent person, or person for whom a conservator has been appointed shall have power, with the approval of the court in which the action or proceeding is pending, to compromise the same, to agree to the order or judgment to be entered therein for or against the ward or conservatee, and to satisfy any judgment or order in favor of the ward or conservatee or release or discharge any claim of the ward or conservatee pursuant to that compromise. Any money or other property to be paid or delivered pursuant to the order or judgment for the benefit of a minor, incompetent person, or person for whom a conservator has been appointed shall be paid and delivered as provided in Chapter 4 (commencing with Section 3600) of Part 8 of Division 4 of the Probate Code.

(Emphasis added)

Further - "The provision of the Civil Code is, that 'a minor may enforce his rights by civil action, or other legal proceedings, in the same manner as a person of full age, except that a guardian must conduct the same.' (Civ. Code, sec. 42.) And in the Code of Civil Procedure it is provided that 'where an infant or an insane person is a party, he must appear *either by his general guardian or by a guardian ad litem appointed by the court in which the action is pending*, in

each case.' (Code Civ. Proc., sec. 372.)."   (Emphasis added) *In re Estate of Cahill*, (1887) 74 Cal. 52, 55.  Thus at this time Plaintiffs request the Court to appoint Liliana Cortez as Samantha Lopez's guardian ad litem.

That Plaintiffs have not requested that Liliana Cortez be appointed guardian ad litem prior to now should not be held against minor Samantha Lopez.   Well-settled precedent dictates that, "The statutes regarding appointment of guardians ad litem were enacted to protect minors and insane and incompetent persons -- not to preclude them from their legal rights. (*Doyle v. Loyd*, 45 Cal.App.2d 493, 497)."  *Briggs v. Briggs*, (1958) 160 Cal. App. 2d 312, 319.  Accordingly, Plaintiffs request an appointment by the Court at this time.

## C.   PLAINTIFFS HAVE IN FACT ALLEGED AN UNCONSTITUTIONAL POLICY AGAINST THE COUNTY

The defendant argues that no unconstitutional policy is alleged against the County and therefore the County should be dismissed with respect to all §1983 claims in the first cause of action.  The defendant is wrong and therefore its request is unjustified.  See Plaintiffs Complaint for Money Damages, ¶ 26:

> Defendants COUNTY OF SAN DIEGO and CITY OF VISTA also maintained a custom, policy or practice of using excessive force against Hispanic males in an effort to intimidate Hispanic males.   Defendants

COUNTY OF SAN DIEGO and CITY OF VISTA also maintained an unconstitutional policy regarding the use of alternative force. The COUNTY OF SAN DIEGO and CITY OF VISTA knew or should have known that it should arm and train its Sheriff's Deputies in the use of force other than deadly force, such as tasers or stun-guns. This unconstitutional policy and refusal to arm and train its Sheriff's Deputies in alternatives to deadly force was a direct cause of the death of David Arnulfo Lopez.

Thus Plaintiffs have in fact alleged an unconstitutional custom, policy or practice against defendants. It is now within the province of a jury to determine whether such allegations are actionable.

## D.    VIOLATION OF PLAINTIFFS' RIGHTS

The defendant is correct when it notes that - "The first cause of action alleges the rights of the decedent were violated, but then proceeds to allege damages sustained by the survivors. Plaintiffs lack standing to assert these causes of action." Plaintiffs concede that in order to assert a fourth and fourteenth amendment claim on David Arnulfo Lopez's behalf they must do so in a representative capacity in a survival action.

[T]he general rule is that only the person whose Fourth Amendment rights were violated can sue to vindicate those rights. *Smith v. City of Fontana*, 818 F.2d 1411, 1417 (9th Cir. 1987). In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

> Amendment claim on that individual's behalf if the relevant state's law authorizes a survival action. 42 U.S.C. § 1988 (a); *Smith*, 818 F.2d at 1416-17. The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action. *Byrd*, 137 F.3d at 1131.

Under California law, Samantha Lopez, Mr. Lopez's daughter, and Filadelfo Lopez, Mr. Lopez's father, are the two Plaintiffs that have the right to bring a survival action on behalf of Mr. Lopez for the violation of Mr. Lopez's fourth amendment rights and the resulting injuries therefrom. Cal. Civ. Proc. Code § 377.60. Plaintiffs therefore request leave of Court to amend the Complaint accordingly.

**E.      INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

While the defendant is correct in noting that plaintiffs were not present when Mr. Lopez was gunned down by the San Diego County Sheriff Deputies, it is not correct when it alleges that this fact makes Plaintiffs' third cause of action invalid. While the general rule is that when intentional infliction of emotional distress is pleaded for outrageous conduct directed at a third party, the plaintiff

---

*Plaintiffs' Response and Opposition to Defendant's Motion to Dismiss*
*Case No. 07CV2028-JLS (WMc)*

may recover if the third party is an immediate family member and the plaintiff was present when the outrageous conduct occurs, Restatement (Second) Torts §46(2), this requirement is not set in stone.

"The requirement of presence is justified primarily on the basis of perceived practical and administrative difficulties…'the practical necessity of drawing the line somewhere.'" *Marlene F. V. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal. 3d 583, 594 (concurring opinion), <u>quoting</u> Rest.2d Torts, §46, com. I, p. 79.  "But the Institute is not absolute on this point." *Id.* "The Institute expresses no opinion as to whether there may not be other circumstances under which the actor may be subject to liability for the intentional or reckless infliction of emotional distress." *Id.*  "This caveat is intended to leave open the possibility of situations in which the presence requirement is not required." *Marlene F.* 48 Cal. 3d at 595 <u>quoting</u> Rest.2d Torts, §46, com. I, p. 79.

In the concurring opinion in *Marlene F.*, Justice Arguelles noted that the presence requirement had been abandoned once before in *Delia S. v. Torres*, (1982) 134 Cal. App. 3d 471, 483-484.  In that case, a husband's wife was raped by his close friend.  Justice Arguelles also noted several out-of-state

jurisdictions that abandoned the presence requirement in molestation cases. "These cases render unnecessary the rigid presence requirement as a practical limitation to verify the authenticity of a mother's claim." *Marlene F.*, 48 Cal. 3d at 597.

The unconstitutional killing of an unarmed son and father, Mr. Lopez, sprayed with bullets by three different Deputies should likewise fall into this category. Presence at the killing is not required to satisfy an administrative interest to verify injury. A father's and a daughter's loss is an injury that should not be subject to the artificial presence requirement. For these reasons, the presence requirement should not bar recovery in this case.

## F.    EMOTIONAL DISTRESS DAMAGES ARE RECOVERABLE

The defendant argues that plaintiffs' claims for emotional distress damages should be stricken because under Cal. Code Civ. Proc. § 377.61 damages for the mental suffering, grief and sorrow that naturally ensue from the death of a loved one are not recoverable in a wrongful death action. However, the defendant is mistaken.

Survivorship and wrongful death damages are not covered by § 1983. This deficiency in federal law is remedied under § 1988 which permits application of state law to the extent the state law is not inconsistent with §

---

1983. *Robertson v. Wegmann*, 436 U.S. 584 (1978).  Therefore, the critical issue is whether the state law limitations on damages is inconsistent with the purposes of § 1983.

Under California law, damages in a survival action "do not include damages for pain, suffering and disfigurement."  Cal. Code Civ. Proc. § 377.34. However, "The acknowledged purposes of a § 1983 action are to compensate persons who have suffered a constitutional violation and deter or prevent 'official illegality.'"  *Robertson*, 436 U.S. 590-92, quoted in *Williams v. City of Oakland*, 915 F.Supp. 1074, 1076.

This conflict was first addressed in the Northern District in *Guyton v. Phillips*, 532 F. Supp. 1154 (N.D. Cal. 1981).  The court first noted there were few reported cases that have addressed the issue.  However, "those that have adopt the view that the state statute should not be allowed to limit the broad remedial purposes of the Civil Rights act of 1871.[1]  *Guyton*, 532 F. Supp. at 1166.  The court reasoned that:

> This court is persuaded by the intent of the Act, the narrow ruling and discussion by the Supreme Court in *Robertson* [436 U.S. 584 (1978)], and the holdings in *Basista v. Weir, supra,* and its progeny, that

---

[1] Citing *Basista v. Weir*, 340 F.2d 74 (3d Cir. 1965); *Mansell v. Saunders*, 372 F.2d 573 (5th Cir. 1967); *Caperci v. Huntoon*, 397 F.2d 799 (1st Cir. 1968).

California's survival statute insofar as it excludes recovery for pain and suffering, is inconsistent with § 1983. Its restrictions on recovery are significantly inhospitable to the policies fostered by the Act. ***To deny recovery for pain and suffering would strike at the very heart of a § 1983 action***. (Emphasis Added) *Id.*

Ultimately, the Court concluded that the decedent's estate could recover "pain and suffering, medical, funeral, and burial expenses," the loss of the decedent's "constitutional right to life" and "punitive damages." *Guyton*, 532 F.Supp. at 1168.

This approach was followed in *Williams v. City of Oakland*, 915 F.Supp 1074 (N.D. Cal. 1996). *Williams* bolstered the reasoning in *Guyton* with a subsequent decision by the United States Supreme Court. In *Smith v. Wade*, 461 U.S. 30 (1983), the Supreme Court emphasized the need for deterrence and punitive damages in a § 1983 case and "went so far as to characterize compensatory damages as 'mandatory' when a violation is found." *Williams v. City of Oakland*, 915 F.Supp. at 1078, <u>quoting</u> *Smith v. Wade*, 461 U.S. at 52. Noting the Supreme Court's emphasis on compensatory damages, the *Williams* court also struck the exclusion for pain and suffering damages in Cal. Code Civ. Proc. § 377.34 as being inconsistent with § 1983.

---

The following year, the holdings of *Guyton* and *Williams* were followed in *Garcia v. Whitehead*, 961 F.Supp. 230 (C.D. Cal. 1997). In so doing, the *Garcia* court specifically refused to follow the California Court of Appeal decision cited by the defense in this case: *Garcia v. Superior Court*, 42 Cal. App. 4th 177 (1996). In *Garcia v. Whitehead*, the California Court of Appeal held that the deterrent purpose of § 1983 is satisfied by the availability of punitive damages in § 377.34. The District Court found this reasoning unpersuasive since punitive damages are never recoverable from the public entity and are based usually on the modest net worth of a police officer. *Garcia,* 961 F.Supp. at 232. The Court also found it absurd to impose a harsher penalty against a police officer for injuring a person than for killing him. *Id.*

The weight of authority in the District Courts of the Ninth Circuit and of the other circuits that have addressed the issue do not permit state law survival statutes to limit § 1983 damages. The one state court decision holding to the contrary (*Garcia v. Superior Court*, supra) has been specifically rejected by at least one District Court (*Garcia v. Whitehead*, supra). Thus it would be improper to strike any compensatory damage claim based on Cal. Code Civ. Proc. § 377.34.

*//*

---

## G.    SINGLE JOINT ACTION BY ALL HEIRS

The defendant is correct when it notes that the Plaintiffs have a duty to include Mr. Lopez's surviving wife in the instant action because she is a "necessary party." *Ruttenberg v. Ruttenberg*, 53 Cal. App. 4th 801, 808 (1997).

> Omitted heirs, however, are 'necessary parties,' and plaintiff heirs have a mandatory duty to join all known omitted heirs in the 'single action' for wrongful death. If an heir refuses to participate in the suit as a plaintiff, he or she may be named as a defendant so that all heirs are before the court in the same action. An heir named as a defendant in a wrongful action is, in reality, a plaintiff. (*Sanders v. Fuller*, supra, 45 Cal. App. 3d at pp. 1002-1003; *Smith v. Premier Alliance Ins. Co.*, supra, 41 Cal. App. 4th at p. 697.)

*Ruttenberg* at 808.

However, Mr. Lopez's stepchildren are only required and eligible to be Plaintiffs in the action if they were "dependent" upon Mr. Lopez. *Holguin v. Flores*, (2004) 122 Cal. App. 4th 428, 442.   Plaintiffs therefore request leave of court to amend the pleading to join Mr. Lopez's wife and potentially his stepchildren in the instant action.

## H.    LEAVE TO AMEND

Finally, Plaintiffs request leave of the Court to amend the Complaint to add one further cause of action for a violation of the remaining parties –

Samantha Lopez and Filadelfo Lopez's – substantive due process and liberty interests arising out of their relationship with Mr. Lopez under the Fourteenth Amendment.

## IV.
## CONCLUSION

For all of the foregoing reasons, Plaintiffs request leave of the Court to amend the Complaint and for the Court to deny Defendant's motion to strike as set forth above.

Dated:    3/14/08                    /S/ Victor M. Torres
                                     VICTOR MANUEL TORRES
                                     Attorney for Plaintiffs

Dated:    3/14/08                    /S/ Ezekiel E. Cortez
                                     EZEKIEL E. CORTEZ
                                     Attorney for Plaintiffs

# PROOF OF SERVICE BY MAIL

I, the undersigned, hereby declare as follows:

1. I am over 18 years of age, a resident of the County of San Diego, State of California, counsel for the Plaintiffs and that my address is 1010 Second Avenue, Suite 1850, San Diego, CA 92101;

2. That today I served by electronic filing Plaintiffs' Response and Opposition to Defendant's Motion to Dismiss Plaintiffs' Entire Complaint or to Strike Emotional Distress Allegations and Require Joinder of Necessary Parties by E-mail to:

   John J. Sansone, County Counsel
   County of San Diego
   By David G. Axtmann, Senior Deputy
   1600 Pacific Highway, Room 355
   San Diego, California 92101
   David.axtmann@sdcounty.ca.gov

I declare under penalty of perjury that the foregoing is true and correct.

Dated:     3/14/08                    /S/ Ezekiel E. Cortez
                                      Ezekiel E. Cortez

---

*Plaintiffs' Response and Opposition to Defendant's Motion to Dismiss*
*Case No. 07CV2028-JLS (WMc)*

**19**