1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

SAMANTHA LOPEZ, et al.,

                                                   Plaintiffs,

        vs.

SHAWN AITKEN, JACOB PAVLENKO,
JONATHAN FECTEAU, ARACELI
GOCOBACHI,

                                                   Defendants.
_____

 AND RELATED CROSSCLAIMS

CASE NO. 07-CV-2028 JLS (WMC)

**ORDER ON PARTIES' MOTIONS
IN LIMINE**

(Doc. Nos. 121–36)

        Presently before the court are sixteen motions in limine: five filed by Plaintiff Samantha Lopez, three filed by Defendant–Cross-claimant Araceli Gocobachi (Cross-claimant), and eight filed by Defendants.  Having considered the parties arguments and the law, the Court hereby rules as follows.

## PLAINTIFF'S AND CROSS-CLAIMANT'S MOTIONS IN LIMINE

**1.       Plaintiff's Motion to Admit Evidence of Previous Shooting Incident (Doc. No. 125)**

        Plaintiff moves to admit evidence of a previous shooting incident in which Defendant Shawn Aitken, in his official capacity, properly used deadly force against a suspect.  Plaintiff contends that this evidence is "relevant and highly probative" because it demonstrates Defendant Aitken's "knowledge of proper safety procedures in situations involving the use of deadly force, and his ability

1  to act in accordance with those safety procedures." (Doc. No. 125, at 2.)

2  Defendants contend that Defendant Aitken's prior shooting was "dissimilar," and that evidence

3  regarding it is therefore "irrelevant and inadmissible under" Federal Rules of Evidence 402, 403, and

4  404(b). (Doc. No. 138, at 2.)  According to Defendants, this evidence also "will unnecessarily

5  lengthen the trial." (*Id.*)

6  The issues to be resolved in this case are (1) whether, objectively, Defendants' use of force was

7  excessive, and (2) whether Defendants acted unreasonably in their use of force. (*See* Doc. No. 108,

8  at 7–8, 17–18.) Defendant Aitken's past conduct does not bear on these issues. *See Gates v. Rivera*,

9  993 F.2d 697, 700 (9th Cir. 1993).

10  Further, the probative value of  Defendant Aitken's prior shooting incident, as it pertains to

11  Defendant Aitken's knowledge of, and ability to comply with, proper safety procedures in situations

12  involving the use of deadly force, is substantially outweighed by the danger of unfair prejudice,

13  confusion of the issues, misleading the jury, and undue delay. Fed. R. Evid. 403. Plaintiff may

14  establish Defendant Aitken's competency through pertinent direct evidence of his education, training,

15  and knowledge regarding the use of force. Accordingly, this motion is **DENIED**.[1]

16  **2.    Plaintiff's and Cross-claimant's Motions to Exclude Evidence of Mr. Lopez's**

17  **Intoxication (Doc. Nos. 126, 133)**

18  Plaintiff and Cross-claimant move to exclude evidence of a post-mortem toxicology report to

19  prove that Mr. Lopez had a measurable amount of methamphetamine in his blood. Plaintiff contends

20  that evidence of Mr. Lopez's intoxication "would not go towards proving any material element of the

21  defense" and would only result in unfair prejudice. (Doc. No. 133, at 4 (citing Fed. R. Evid. 403).)

22  Plaintiff also contends that evidence of Mr. Lopez's intoxication amounts to inadmissible character

23  evidence. (*Id.*)

24  Evidence of Mr. Lopez's intoxication is relevant and admissible because it tends to make the

25  existence of a fact of consequence more or less probable. Fed. R. Evid. 401, 402. Specifically,

26  evidence of Mr. Lopez's intoxication substantiates Defendants' assertions that Mr. Lopez was acting

27

28  _____

[1]  All rulings herein are without prejudice and subject to reconsideration at trial should circumstances warrant.

irrationally and unpredictably at the time of the incident, and their claims that Mr. Lopez resisted arrest. *See Boyd v. City & Cnty. of S.F.*, 576 F.3d 938, 944 (9th Cir. 2009) (holding, in excessive force case, that evidence that decedent was on drugs was relevant because it made assertions that decedent was acting erratically more probable); *T.D.W. v. Riverside Cnty.*, 2010 WL 1006618, at *4 (C.D. Cal. Mar. 11, 2010) (holding, in excessive force case, that evidence of decedent's intoxication was properly admitted at trial "because this evidence was probative of decedent's conduct, particularly when defendants contended that decedent's erratic behavior immediately proceeding and at the time of the shooting led to their use of force"); Doc. No. 55-4 (Aitken Decl.) ¶¶ 7–9. In turn, these facts bear on whether, objectively, Defendants' use of force was excessive or unreasonable. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a *reasonable officer on the scene*, rather than with the 20/20 vision of hindsight." (emphasis added)) .

Further, Plaintiff's characterization of evidence of Mr. Lopez's intoxication as inadmissible "character evidence" lacks merit. Defendants do not seek to introduce evidence of past instances of intoxication "in order to show action in conformity therewith." Fed. R. Evid. 404(b). Rather, Defendants seek to introduce evidence of Mr. Lopez's intoxication *at the time of the incident*. This evidence is relevant and admissible. Accordingly, these motions are **DENIED**.

**3.   Plaintiff's Motion to Exclude Evidence of Mr. Lopez's Gang Affiliation (Doc. No. 134)**

Plaintiff moves to exclude evidence of Mr. Lopez's gang affiliation, to wit, the Vista Home Boys. According to Plaintiff, "[t]here is no evidence that the defendants knew of any gang affiliation when Cross-claimant encountered, struggled with, shot, and killed [Mr.] Lopez"; and accordingly, evidence of Mr. Lopez's gang affiliation is irrelevant and constitutes inadmissible character evidence. (Doc. No. 134, at 4.)

Defendants contend that evidence of Mr. Lopez's gang affiliation "explain[s] Mr. Lopez'[s] intent to kill the deputies or himself and why he fought them so ferociously." (Doc. No. 142, at 2.) Apparently, the inference Defendants propose to ask the jury to draw is that Mr. Lopez's gang affiliation made him more likely to violently resist arrest. However, Defendants offer no evidence regarding the nature of the Vista Home Boys or the activities its members engaged in. Thus, the

1  probative value of Mr. Lopez's gang affiliation is marginal, at best.

2      Defendants also contend that Mr. Lopez's gang affiliation is relevant to Plaintiff's and Cross-

3  claimant's claims for general damages.  (*Id.*)  Defendants propose to ask the jury to infer that because

4  of his gang affiliation, Mr. Lopez would have "habitually violated parole," leaving him unavailable

5  to visit Plaintiff or Cross-claimant (*id.*), and would have suffered reduced earning capacity even if he

6  did not reoffend (*id.* at 3).  As above, however, Defendants offer no evidence to support these

7  inferences.  And even if Defendants did, the Court would find any relevance of gang affiliation

8  evidence substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.  Accordingly,

9  this motion is **GRANTED**.

10  **4.    Plaintiff's Motion to Exclude Evidence of Prior Instances of Domestic Violence (Doc. No.**

11  **135)**

12      Plaintiff moves to exclude evidence of prior incidents of domestic violence involving Mr.

13  Lopez and Cross-claimant.  According to Plaintiff, evidence of prior instances of domestic violence

14  is not relevant to whether Defendants used excessive force and would only prejudice the jury.  (Doc.

15  No. 135, at 6.)

16      Defendants contend that this evidence pertains to Cross-claimant's damages claims for loss

17  of society and companionship.  (Doc. No. 139, at 5.)  "[A]s a result of the domestic violence and

18  consequent restraining orders obtained by [Cross-claimant] and imposed by parole terms," Cross-

19  claimant and Mr. Lopez "lived together as a married couple for a grand total of 32 days."  (*Id.*)

20      The Court agrees that of prior instances of domestic violence is pertinent to the amount of

21  pecuniary support, comfort, and society Mr. Lopez would have otherwise provided to Cross-claimant.

22  *See Galvan v. Yates*, 2008 WL 650282, at *1 (E.D. Cal. Mar. 5, 2008) (admitting documentary

23  evidence of prior instances of domestic violence "to the extent that the documents address  . . .

24  plaintiffs' relationship with decedent . . . and plaintiffs' alleged damages arising from loss of

25  decedent's companionship and society"); *Garcia v. Superior Court*, 49 Cal. Rptr. 2d 580, 586 (Cal.

26  Ct. App. 1996) (holding that survivor in wrongful death action may recover "pecuniary losses caused

27  by the death, including pecuniary support the decedent would have provided them, and noneconomic

28  damages for being deprived of the decedent's society and comfort").  Accordingly, as to Cross-

1  claimant's damages alone, Defendants may introduce evidence of prior incidents of domestic violence

2  involving Mr. Lopez and Cross-claimant and the resulting restraining order.  The Court will address

3  Plaintiff's contention that this evidence will be unfairly prejudicial by giving an appropriate limiting

4  instruction to the jury.  Accordingly, this motion is **DENIED**.

5  **5.     Plaintiff's and Cross-Claimant's Motions to Exclude Evidence of Mr. Lopez's Criminal**

6  **History (Doc. Nos. 127, 136)**

7       Plaintiff and Cross-claimant move to exclude evidence of Mr. Lopez's criminal record.

8  According to Plaintiff and Cross-claimant, this evidence is not relevant to whether Defendants used

9  excessive force when they shot and killed Mr. Lopez and would only prejudice the jury.  (Doc. No.

10  127, at 2–3; Doc. No. 136, at 5.)

11       Defendants contend that evidence of Mr. Lopez's criminal history "illuminate[s] the

12  consequences that [Mr.] Lopez faced if apprehended by law enforcement for felony assault" and thus

13  "explain[s] Mr. Lopez'[s] intent to kill the deputies or himself and why he fought them so

14  ferociously."  (Doc. No. 142, at 2.)  "However, the suggestion that [Mr. Lopez] was more likely to

15  resist arrest because of his recent release is nothing more than unsupported conjecture.  Indeed, the

16  desire to avoid re-incarceration would likely apply to any person who was previously in custody."

17  *Cotton v. City of Eureka*, 2010 WL 5154945, at *6 (N.D. Cal. Dec. 14, 2010).  Thus, evidence of Mr.

18  Lopez's criminal history is not relevant to whether, objectively, Defendants' use of force was

19  excessive or unreasonable.

20       Defendants also contend that evidence of Mr. Lopez's prior criminal record is relevant to

21  Plaintiff's and Cross-claimant's damages claims for loss of society and companionship.  (Doc. No.

22  142, at 2–3.)  According to Defendants, Mr. Lopez's criminal history makes more probable that Mr.

23  Lopez would have "habitually violated parole," leaving him unavailable to visit Plaintiff or Cross-

24  claimant (*id.*); and would have suffered reduced earning capacity even if he did not reoffend (*id.* at

25  3).

26       The Court agrees that the probation condition forbidding Mr. Lopez from contacting Cross-

27  claimant and Mr. Lopez's past separation from Plaintiff and Cross-claimant are pertinent to the

28  amount of pecuniary support, comfort, and society Mr. Lopez would have otherwise provided them.

*See Peraza v. Dalmeter*, 722 F.2d 1455, 1457 (9th Cir. 1984) (holding, in excessive force case, that trial court did not err in admitting evidence of plaintiff's subsequent encounters with police because evidence went to issue of damages and was accompanied by limiting instruction).  The nature of the convictions that led to the earlier incarcerations and subsequent probation is not relevant to damages, however, and would have a prejudicial impact that would substantially outweigh any probative value that exists.  Accordingly, as to damages alone, Defendants may introduce evidence of Mr. Lopez's prior periods of incarceration and the terms of his subsequent probation.  The Court will address Plaintiff's and Cross-claimant's contentions that this evidence will be unfairly prejudicial by giving an appropriate limiting instruction to the jury.  Accordingly, these motions are **GRANTED IN PART** and **DENIED IN PART**.

**6.     Cross-Claimant's Motion to Exclude Evidence of Mr. Lopez Having Had Suicidal Thoughts (Doc. No. 128)**

Cross-claimant moves to exclude evidence of conversations and correspondence between Mr. Lopez and Cross-claimant during which Mr. Lopez indicated that he felt like he would be killed the next time that he came into contact with law enforcement.  According to Cross-claimant, this evidence is not relevant to Defendants' "state of mind nor the information relied upon by Defendants when Cross-claimant shot" Mr. Lopez and would only mislead the jury. (Doc. No. 128, at 2–3.)

Defendants contend that evidence of Mr. Lopez's mental state relates to the irrational and unpredictable nature of his conduct.  (Doc. No. 140, at 3.)  The Court agrees.  Like evidence of Mr. Lopez's intoxication, evidence of Mr. Lopez's mental state substantiates Defendants' assertions that Mr. Lopez was acting irrationally and unpredictably at the time of the incident, and their claims that Mr. Lopez resisted arrest.  In turn, these facts bear on whether, objectively, Defendants' use of force was excessive or unreasonable.  Accordingly, this motion is **DENIED**.

**DEFENDANTS' MOTIONS IN LIMINE**

**1.     Motion to Exclude Settlement Offers or Negotiations (Doc. No. 121)**

Defendants move to exclude "any comment or solicitation or evidence" regarding settlement negotiations in this case.  (Doc. No. 121, at 1–2.)  Plaintiff indicates that she has no intention of introducing any evidence of confidential settlement offers or negotiations in her case-in-chief. (Doc.

No. 147, at 1.)  Accordingly, this motion is **GRANTED**.

**2.      Motion to Exclude Evidence of Previous Shooting Incident (Doc. No. 122)**

For the reasons discussed *supra* as to Plaintiff's motion to admit evidence of previous shooting incident, this motion is **GRANTED**.

**3.      Motion to Exclude Evidence of Defendants' Financial Information (Doc. No. 123)**

Defendants move to exclude evidence regarding their financial assets or net worth unless and until the jury finds them liable for punitive damages during the first phase of the trial.  (Doc. No. 123, at 1–2; *see Smith v. Wade*, 461 U.S. 30, 56 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").)  Plaintiff indicates that she has no intention of introducing this evidence in her case-in-chief.  (Doc. No. 147, at 2.)  Accordingly, this motion is **GRANTED**.

**4.      Motion to Exclude Evidence of Failing to Shake Opposing Counsel's Hand (Doc. No. 124)**

Defendants move to exclude evidence that Defendant Aitken refused to shake Cross-claimant's counsel's hand when introduced at Defendant Aitken's deposition.  (Doc. No. 124, at 1.)  Plaintiff indicates that she has no intention of introducing this evidence in her case-in-chief.  (Doc. No. 147, at 2.)  Accordingly, this motion is **GRANTED**.

**5.      Motion to Exclude Expert Opinion by Robert Johnson (Doc. No. 129)**

Defendants move to exclude any testimony by Robert Johnson, Cross-claimant's designated expert for "value of human life."  (Doc. No. 129, at 2.)  According to Defendants, Mr. Johnson's expert opinion does not pertain to this case, lacks scientific and foundational basis, and would only prejudice the jury.  (*Id.* at 2–4.)  Further, Defendants contend that Mr. Johnson lacks adequate qualifications to testify as an expert.  (*Id.* at 3.)

Plaintiff[2] contends that Mr. Johnson's opinion is relevant to the issue of damages.  (Doc. No. 147, at 2.)  According to Plaintiff, Defendants' objections go to the weight of Mr. Johnson's

_____

[2] The Court notes that Plaintiff responded in opposition to Defendants' motion to exclude Mr. Johnson's testimony.  (Doc. No. 147, at 2.)  Defendants submit that Plaintiff lacks standing to oppose their motion because Mr. Johnson is Cross-claimant's expert.  (Doc. No. 151.)  Given the Court's resolution of this motion, the Court sees no need to address this issue.

1   testimony, not its admissibility.  (*Id.*)

2        The Court agrees with Defendants.  In *Estate of Dubose v. City of San Diego*, 2002 WL

3   34408963 (S.D. Cal. Oct. 1, 2002), Judge Lorenz excluded the same testimony by the same expert that

4   Cross-claimant proposes to offer here because it did not meet the threshold standard for admissibility

5   under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579

6   (1993).  The same three reasons that justified exclusion of Mr. Johnson's testimony in *Estate of*

7   *Dubose* justify its exclusion here.  First, the validity of the results of the surveys upon which Mr.

8   Johnson's willingness-to-pay methodology is based "cannot be verified because, by definition, it

9   purports to measure an intangible that is not amenable to analytical precision." *Estate of Dubose*,

10  2002 WL 34408963, at *2.  Second, Mr. Johnson's opinion "will not assist the jury reach a decision"

11  because it does not take into account the facts and circumstances of Mr. Lopez's particular case.  *Id.*;

12  *see* Doc. No. 129-1, at 13 ("The summing of this [willingness-to-pay] measure *across all people*

13  provides an estimate, to a reasonable degree of economic certainty, of the intangible value of human

14  life." (emphasis added)).  Third, "the jury will have the knowledge and life experience to determine

15  a fair damages award based upon the testimony received at trial.  As in any other wrongful death case,

16  this factual determination is most appropriately left to the province of the jury." *Estate of Dubose*,

17  2002 WL 34408963, at *2 (citations omitted).  Accordingly, this motion is **GRANTED**.

18  **6.      Motion to Exclude Stairway and Landing (Doc. No. 130)**

19       Defendants move to exclude the stairway and landing Plaintiff and Cross-claimant contend was

20  involved in the incident.  Cross-claimant's attorney purchased and stored the stairway for the purpose

21  intending to use it at trial as a demonstrative exhibit.  (Doc. No. 130-1, at 21 ("I had the item

22  stored . . . for safekeeping until such a time as the trial commences and we can transport it to the

23  courthouse for illustration to the jury how David Lopez was killed by the deputy sheriffs.").)

24  According to Defendants, this evidence lacks foundation and would only prejudice the jury.

25       Cross-claimant contends that the stairway that counsel purchased is substantially similar to the

26  stairway involved in the incident because "[t]he stair case and landing to be proffered appears to be

27  the same as the stair case and landing pictured in the photographic evidence provided by Defendants."

28  (Doc. No. 143, at 2.)  Plaintiff even goes so far as to contend that the stairway "may actually be

admissible." (Doc. No. 147, at 3.) These arguments lacks merit. Cross-claimant's counsel's argument in a pleading is not *evidence* that the stairway at issue is substantially similar to the stairway involved in the incident. *See* Fed. R. Evid. 901. And neither Plaintiff nor Cross-claimant has demonstrated that a witness, percipient or otherwise, can lay the evidentiary foundation necessary to use the stairway for demonstrative purposes or admit it into evidence. Accordingly, this motion is **GRANTED**.

**7.     Motion to Exclude Torso Model (Doc. No. 131)**

Defendants move to preclude Plaintiff and Cross-claimant from conducting courtroom demonstrations using a human torso model. According to Defendants, "there will be no foundation for such evidence and any effort at recreating [Mr. Lopez's] body or [projectile] trajectories would be misleading, confusing[,] and an unproductive waste of time." (Doc. No. 131, at 2.)

Cross-claimant submits that her human torso model is substantially similar the description of Mr. Lopez's torso provided by Dr. Lucas, the doctor who examined Mr. Lopez's body. (Doc. No. 144, at 2.) Further, Cross-claimant contends that any use of rods to depict projectile trajectories on the human torso model would be consistent with Dr. Lucas's trial testimony. (*Id.*)

Because Cross-claimant has offered to provide the evidentiary foundation necessary to use the torso model for demonstrative purposes, the Court will **RESERVE RULING** until such time as the model is sought to be introduced at trial. Before Plaintiff or Cross-claimant may use the model before the jury, the Court will require its proponent to establish the necessary foundation, through an appropriate witness, outside the jury's presence. *See* Fed. R. Evid. 104(a), (c).

**8.     Motion to Exclude Evidence of Emotional Distress (Doc. No. 132)**

Defendants move to exclude evidence in support of a damage claim for pain and suffering, mental suffering, grief, and sorrow that Mr. Lopez or Plaintiff or Cross-claimant may have suffered because of Mr. Lopez's death. According to Defendants, this evidence is irrelevant in a § 1983 action. (Doc. No. 132, at 2–3.)

Cross-claimant and Plaintiff concede that California law bars recovery of damages for Mr. Lopez's pain and suffering. (Doc. No. 145, at 2; Doc. No. 147, at 3; *see* Cal. Civ. Proc. Code § 377.34.) However, Plaintiff contends that evidence of her emotional distress is relevant to her claim

1   for loss of comfort and society (Doc. No. 147, at 3), and Cross-claimant contends that evidence of her

2   emotional distress is relevant to her claims for loss of comfort and society and loss of consortium

3   (Doc. No. 145, at 2.)

4        The Court agrees with Defendants.  "California cases have uniformly held that damages for

5   mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death

6   action." *Krouse v. Graham*, 562 P.2d 1022, 1028 (Cal. 1977).  Thus, damages for Plaintiff's and

7   Cross-claimant's emotional distress are not recoverable under § 1983. *T.D.W. v. Riverside Cnty.*, 2009

8   WL 2252072, at *7 (C.D. Cal. July 27, 2009).  And contrary to Plaintiff's and Cross-claimant's

9   arguments, their emotional distress has no bearing on their claims for loss of society and

10  companionship and loss of consortium; these are separate and distinct categories of damages.  *See* Cal.

11  Civ. Code § 1431.2(b)(2) (discussing emotional distress, loss of society and companionship, and loss

12  of consortium as separate categories of noneconomic damages).  Accordingly, this motion is

13  **GRANTED**.

## CONCLUSION

15       In summary, for the reasons stated, the Court:

16  —  **DENIES** Plaintiff's motion in limine to admit evidence of previous shooting incident (Doc.

17      No. 125);

18  —  **DENIES** Plaintiff's motion in limine to exclude evidence of intoxication of the deceased (Doc.

19      No. 133);

20  —  **GRANTS** Plaintiff's motion in limine to exclude evidence of gang affiliation (Doc. No. 134);

21  —  **DENIES** Plaintiff's motion in limine to exclude evidence of prior instances of domestic

22      violence (Doc. No. 135);

23  —  **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion in limine to exclude evidence

24      of prior criminal history (Doc. No. 136);

25  —  **DENIES** Cross-claimant's motion in limine to exclude evidence of the decedent's alcohol and

26      drug level/consumption (Doc. No. 126);

27  —  **GRANTS IN PART** and **DENIES IN PART** Cross-claimant's motion in limine to exclude

28      evidence of the decedent's criminal history (Doc. No. 127);

1  — **DENIES** Cross-claimant's motion in limine to exclude evidence of the decedent having had
2  suicidal thoughts (Doc. No. 128);
3  — **GRANTS** Defendants' motion in limine to exclude settlement offers or negotiations (Doc. No.
4  121);
5  — **GRANTS** Defendants' motion in limine to exclude evidence regarding other shooting
6  incidents and litigation (Doc. No. 122);
7  — **GRANTS** Defendants' motion in limine to exclude evidence of Defendants' financial
8  information (Doc. No. 123);
9  — **GRANTS** Defendants' motion in limine to exclude evidence of "failing to shake opposing
10  counsel's hand (Doc. No. 124);
11  — **GRANTS** Defendants' motion in limine to exclude expert opinion by Robert Johnson (Doc.
12  No. 129);
13  — **GRANTS** Defendants' motion in limine to exclude evidence without proper foundation
14  (stairway and landing) (Doc. No. 130);
15  — **RESERVES RULING ON** Defendants' motion in limine to exclude evidence without proper
16  foundation (torso model) (Doc. No. 131); and
17  — **GRANTS** Defendants' motion in limine to exclude evidence of emotional distress and related
18  ailments (Doc. No. 132).
19  **IT IS SO ORDERED.**
20
21  DATED:  February 18, 2011
22  Honorable Janis L. Sammartino
23  United States District Judge
24
25
26
27
28